UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DAVID JACKSON III and NICKOLE JACKSON,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD ZORMIER, Police Chief, City of Hobart, Indiana, and DETECTIVE ROBERT BRAZIL,<br><br>Defendants. | CAUSE NO.: 2:20-CV-45-TLS-APR |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion to Dismiss [ECF No. 50] for failure to state a claim. The Plaintiffs filed a response [ECF No. 55], and the Defendants filed a reply [ECF No. 56]. For the following reasons, the Court grants the motion to dismiss.

To survive a motion to dismiss for failure to state a claim, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "more than labels and conclusions." *Id.* at 555. Rather, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Applying this standard, we first accept all well-pleaded facts in the complaint as true and then ask whether those facts state a plausible claim for relief." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015).

Plaintiffs David Jackson III and Nickole Jackson have brought claims against the Hobart Chief of Police Richard Zormier in his official capacity and against Detective Robert Brazil

individually. The following facts are taken from the Complaint. ECF No. 1. On March 15, 2018, the Hobart police entered the Plaintiff's home to arrest Mr. Jackson and detained Mrs. Jackson. The police left and arrested Mr. Jackson at his place of employment. The police advised him that he was arrested for sexual misconduct with a minor based on the minor's report. According to the police, the Plaintiffs opened a board game business for the purpose of having sex with children. The police directed the Hobart Building Department to shut down the Plaintiff' business. When Mr. Jackson offered an alternate explanation, they refused to investigate.

Detective Brazil interrogated Mr. Jackson but accused him of lying and continued to refuse to investigate the alternative investigation. He also confiscated Mr. Jackson's water during the interrogation, and Mr. Jackson requested a lawyer. The police subjected him to racial epithets and goaded him. They also refused to give him food and delivered him to the Lake County Jail after mealtime. At the Lake County Jail, he was not served food at reasonable times and was not permitted to contact his family. He also did not receive toilet paper and slept on bare concrete.

Two other individuals accused Mr. Jackson of sex crimes. On March 23, 2018, the Hobart police arrested Mr. Jackson again. The police did not take Mr. Jackson's statement prior to the arrest in which he would have asserted that he did not have access to the property on the dates of his offenses and that he could not have raped anyone five days after gallbladder surgery. In jail, the guards ignored assaults against Mr. Jackson, denied him medical care for severe pain, and placed him in solitary confinement. In the months that followed, the Hobart police and Detective Brazil concealed exculpatory evidence.

The Court first considers the allegations against Detective Brazil. To start, it is unclear how Detective Brazil violated Mr. Jackson's constitutional rights by accusing him of lying or by confiscating his water during the interrogation. The Court is also unaware of any federal

authority establishing an accused criminal's constitutional right to an adequate investigation from law enforcement. *See Beauchamp v. City of Noblesville*, 320 F.3d 733, 744 (7th Cir. 2003) ("First, criminal suspects frequently protest their innocence, and a suspect's denial of guilt generally is not enough to trigger a duty to investigate in the face of a reasonably believable witness and readily observable events. Second, once an officer learns sufficient trustworthy information establishing probable cause, he is entitled to rely on what he knows in pursuing charges or an arrest, and is under no further duty to investigate." (cleaned up)). Further, while the disclosure of material exculpatory evidence to criminal defendants is required, *see Kyles v. Whitley*, 514 U.S. 419, 433 (1995), Mr. Jackson has pled guilty in connection with the crimes reported by his accusers.[1] Because the failure to disclose allegations, if true, would undermine the validity of his convictions and because these convictions have not been vacated, expunged, or otherwise formally invalidated, he cannot proceed on these allegations. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Therefore, the Plaintiffs do not state a valid claim against Detective Brazil.

The Plaintiffs also assert that Hobart Chief of Police Richard Zormier in his official capacity maintained a policy or practice that violated their constitutional rights.[2]

> A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. To demonstrate that the [local governing body] is liable for a harmful custom or practice, the plaintiff must show that [the local] policymakers were deliberately indifferent as to the known or obvious

---

[1] Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of the electronic dockets for the Indiana courts, which are available at https://public.courts.in.gov/mycase/. The criminal cases are 45G02-1803-F3-11; 45G02-1803-F4-11; and 45G02-1803-F4-9.

[2] The Defendants' argument that the Plaintiffs should have named the City of Hobart rather than the Chief of Police is well taken. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." (cleaned up)). Nevertheless, the Court considers the merits of the claims asserted against the Chief of Police in the interest of judicial economy to avoid a potentially futile substitution of parties.

>consequences. In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff.

*Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (cleaned up).

For the reasons stated with respect to the allegations against Detective Brazil, the Plaintiffs cannot proceed on the allegations that the Hobart Chief of Police had a practice of failing to train detectives, failing to adequately investigate charges, or concealing material evidence. The Court is unaware of any federal authority preventing law enforcement from communicating with the public regarding criminal suspects or ongoing investigations, from shutting down businesses suspected of involvement in criminal activity, or from making citizens angry.

The assertion that the police treated Mr. Jackson "unjustly" or "harshly" due to his Puerto Rican ethnicity is too vague to state a plausible claim. The sole allegations suggesting racial discrimination involve the use of racial epithets, but "[t]he use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). No other allegation suggests that he was treated differently from similarly situated individuals of other ethnicities. *See Chavez v. Ill. State Police*, 251 F.3d 612, 636 (7th Cir. 2001) ("To prove discriminatory effect, the plaintiffs are required to show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that plaintiffs were treated differently from members of the unprotected class."). The allegations regarding excessive force and failure to consider medical or dietary needs are similarly too vague to state a plausible claim.[3]

---

[3] The court does not understand the complaint as alleging that the Hobart Police Department served as jail officers at the Lake County Jail.

The allegations that the police wrongfully detained the Plaintiffs are more detailed and require more nuanced consideration. "[P]olice officers may not constitutionally enter a home without a warrant to effectuate an arrest, absent consent or exigent circumstances, even if they have probable cause." *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001). Significantly, the state court docket for Case No. 45G02-1803-F4-9 indicates that a warrant was issued for Mr. Jackson on March 14, 2018. "[L]aw enforcement officers do not need a search warrant in addition to an arrest warrant to enter a third party's residence in order to effect an arrest." *United States v. Jackson*, 576 F.3d 465, 468 (7th Cir. 2009). "Although officers do not need a search warrant to execute an arrest warrant in a third party's home, they do need *some* basis for believing that the suspect is actually present in the home." *Id.* Mr. Jackson concedes that he lived in the same home as Mrs. Jackson and that the police did not know that Mr. Jackson was at work until Mrs. Jackson told them, so the police had some basis to believe that Mr. Jackson would be present. As a result, the Court facts alleged show that the police lawfully entered the Plaintiffs' home.

The Court next considers the question of whether the police lawfully detained Mrs. Jackson during their efforts to execute the Mr. Jackson's arrest warrant. The seminal case appears to be *Michigan v. Summers*, 452 U.S. 692 (1981). "In *Summers*, the Court defined an important category of cases in which detention is allowed without probable cause to arrest for a crime. It permitted officers executing a search warrant to detain the occupants of the premises while a proper search is conducted." *Bailey v. United States*, 568 U.S. 186, 193 (2013) (cleaned up). While federal courts have not reached a consensus on whether the categorical exception established in *Summers* extends to the execution of an arrest warrant, they have nevertheless agreed that such detentions are constitutionally permissible if they are objectively reasonable.

*Sharp v. County of Orange*, 871 F.3d 901, 915 (9th Cir. 2017) ("After all, entry into a home for the purpose of arresting an occupant can be a dangerous effort, and officers ought to have reasonable tools at their disposal to take command of the situation to protect their own safety and the safety of others."); *Gomez v. United States*, 601 F. App'x 841, 849 (11th Cir. 2015) ("Given these particular circumstances, we conclude that Officer Doe lawfully and reasonably directed and controlled the movement of Gomez in conjunction with the safe and efficient execution of the arrest warrant."); *Cherrington v. Skeeter*, 344 F.3d 631, 638 (6th Cir. 2003) ("As another example, the police have the limited authority to briefly detain those on the scene, even wholly innocent bystanders, as they execute a search or arrest warrant."); *see also Michigan v. Fisher*, 558 U.S. 45, 47 (2009) ("The ultimate touchstone of the Fourth Amendment, we have often said, is reasonableness." (cleaned up)).

Here, the Plaintiffs do not allege how the police arrested or detained Mrs. Jackson or otherwise prevented her from leaving. Even assuming that Mrs. Jackson's detention occurred, the Plaintiffs do not allege any facts suggesting that it was unreasonable. As a result, the Plaintiffs do not plausibly state a claim that Mrs. Jackson was wrongfully detained.

The Plaintiffs also dispute the lawfulness of Mr. Jackson's arrests. As mentioned above, the State court docket for Case No. 45G02-1803-F4-9 indicates that a warrant was issued for Mr. Jackson on March 14, 2018, and it further indicates that warrants were issued for Mr. Jackson on March 23, 2018, in Cases No. 45G02-1803-F3-11 and Case No. 45G02-1803-F4-11. The Plaintiffs seem to argue that the arrest warrants were not supported by probable cause because the accusers were not credible. Because this argument, if proven true, would undermine the validity of his convictions and because these convictions have not been vacated, expunged, or

6

otherwise formally invalidated, he cannot proceed on these allegations. *See Heck*, 512 U.S. at 486–87.

The remaining claims are state law claims. The complaint expressly relies on federal question jurisdiction and supplemental jurisdiction, and it appears that all parties reside in Indiana, so the Court does not have diversity of citizenship jurisdiction under 28 U.S.C. § 1332. Consequently, the remaining State law claims rely on supplemental jurisdiction pursuant to 28 U.S.C. § 1367. A federal court may decline to exercise supplemental jurisdiction over a State law claim when the court has dismissed all the claims within its original jurisdiction. 28 U.S.C. § 1367(c)(3). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998). In deciding whether to retain federal jurisdiction, a court may consider whether the case is in its "gestational stage," the areas of state law that are implicated in the plaintiff's claim, and the need to "promote judicial economy, fairness, and comity with state courts." *Isabella A. v. Arrowhead Union High Sch. Dist.*, 323 F. Supp. 3d 1052, 1064–65 (E.D. Wis. 2018) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351–52 (1988); *Sharp Elecs. Corp. v. Metro. Life Ins.*, 548 F.3d 505, 514–15 (7th Cir. 2009)).

Here, dismissal of the remaining State law claims is appropriate. Applying the relevant factors, the Court finds that this case remains in its gestational stage, notwithstanding its age, as the parties have not yet conducted any discovery regarding the merits of the claims. The remaining state law claims implicate fundamental state law issues, which the Court is hesitant to rule on when Indiana courts are adequately prepared to handle the case. Lastly, the interests of judicial economy, fairness, and comity with state courts weigh in favor of relinquishing

jurisdiction over the state law claims. Consequently, the Court declines to retain jurisdiction under 28 U.S.C. § 1367 and dismisses the remaining State law claims without prejudice to the Plaintiffs' ability to pursue them in State court.[4]

For these reasons, the Court:

(1) GRANTS the Motion to Dismiss [ECF No. 50];

(2) DISMISSES the federal claims asserted by David Jackson III and Nickole Jackson for failure to state a claim; and

(3) DISMISSES the state law claims David Jackson III and Nickole Jackson pursuant to 28 U.S.C. § 1367(c).

SO ORDERED on September 6, 2024.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[4] The Court has also considered whether the applicable statute of limitations would bar the Plaintiffs from refiling these claims in state court. It would not. *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Artis v. District of Columbia*, 583 U.S. 71, 75–88 (2018).